MURRAY ET AL., APPELLANTS, v. HINDS ET AL.,
RESPONDENTS.

(No. 1,894.)

(Submitted April 29, 1904.   Decided June 3, 1904.)

*Taxation—Surface of Mining Claims—Use for Purpose Other
Than Mining—Evidence.*

Constitution, Article XII, Section 3, and Political Code, Section 3672, declare
that all mines and mining claims, after purchase from the government,
shall be taxed at the price paid the government, and that if the surface
ground, or any portion thereof, is valuable for any other purpose than
mining, it shall be taxed at its value for such other purpose. A mining
claim was within the limits of a city, and, while it had never been made
an addition to the city, the owners had made a plat, and sold lots and
blocks from the claim for townsite purposes; describing the portions sold
by metes and bounds. The owners of the claim claimed that a portion
thereof was reserved for mining purposes, and not taxable for any purpose
other than mining; and it appeared that a shaft had once been sunk on
such reserve, but that it had been abandoned, and that the lot on which
the shaft was sunk had been sold. *Held,* that the so-called reserve was
taxable for purposes other than mining.

*Appeal from District Court, Silver Bow County; John B.
McClernan, Judge.*

SUIT by James A. Murray and others against Thomas R.
Hinds, as treasurer of Silver Bow county, and others. From
a judgment for defendants, and from an order denying a mo-
tion for a new trial, plaintiffs appeal. Affirmed.

*Mr. James E. Murray,* for Appellants.

In this case the plaintiffs, as owners of the Railroad lode
claim, seek to enjoin the enforcement or collection of certain
assessments and taxes levied upon the portion of the claim re-
served for mining purposes for taxation during the years men-
tioned in the complaint. It is an established fact in the case
that the lode claim taxes during each and all the years in con-
troversy were paid and the taxes which the defendants are seek-

ing to enforce against the reserved portions were levied for municipal and county purposes and levied upon the basis of the property being held and used for other than mining purposes. We submit that the record fails to show that the plaintiffs ever platted or caused the property in controversy to be platted, or ever held or used the property for other than mining purposes; that, therefore, it is only taxable for lode claim purposes, and the attempted levy of taxes, which are complained of in this case, was illegal and void and their enforcement or collection should be restrained. (*Farlin* v. *Hill* (Mont.), 69 Pac. 237; *Mayor, etc.* v. *Fear*, 82 Md. 256; Constitution of Montana, Art. XII, Sec. 3; Laws of 1891, pp. 73, 74; Political Code, Sec. 3672; *Montana C. & C. Co.* v. *Livingston*, 21 Mont. 59, 67; *Hopkins* v. *City of Butte*, 16 Mont. 103; 2 Devlin on Deeds, Secs. 1349, 1351; Black on Tax Titles, Secs. 463, 216, 217, 220, 386, 123, 124; *O'Hara* v. *Parker* (Ore.), 39 Pac. 1004, 1007; *Kitcherside* v. *Myers*, 10 Ore., 23; *Creely* v. *Brick Co.*, 103 Mass. 515; Political Code, Secs. 4024, 4026, 5165, 3897, 3898; *Cobban* v. *Hinds*, 23 Mont. 338, 349, 350; *Brown* v. *French*, 80 Fed. 166-170; Cooley on Taxation, pp. 469, 470; 1 High on Injunction, Sec. 530, 413 note 1, 697; *Bucknall* v. *Story*, 36 Cal. 67, 74; Code of Civil Procedure, Sec. 871; *Hare* v. *Carnal*, 39 Ark. 196; *Dows* v. *Chicago*, 11 Wall. 108; *Kellogg* v. *King*, 114 Cal. 378; *Gregg* v. *Sanford*, 65 Fed. 151-8; *Robinson* v. *City of Wilmington*, 65 Fed. 856-8; *Ogden* v. *Armstrong*, 168 U. S. 223.)

The plaintiffs also complain that even though the alleged and pretended taxes were properly assessable against the property in controversy, that there never was a valid levy of the same, and they are not binding. Under the provisions of the law existing prior to the Codes of 1895, the board of county commissioners of each county constituted the board of equalization. (Comp. Stat. 1887, Div. 5, Sec. 1698; Laws 15th Sess., p. 92, Sec. 22; Laws 2d Sess., p. 96.) Under the provisions of Section 378, Chapter 22, Fifth Division, Compiled Statutes of 1887, as amended by the Act of March 14, 1889, "the city coun-

cil or board of aldermen of each incorporated city or town shall, prior to the 1st day of September, elect four of their number, and the aldermen so elected, together with the county commissioners, shall constitute a board of equalization, whose duty it shall be to equalize the assessments of property within the limits of the city or town as they may deem just and equitable." (Laws of 1889, p. 184.) The attention of the court is called to the fact that no such board of equalization was ever constituted, in that the record shows that the only members of the council that ever met with the county commissioners as a board of equalization to pass upon the taxes for the years 1893 and 1894 were three members of the council appointed by the mayor. We therefore submit that no board of equalization was ever constituted, before whom the plaintiffs would have a right to appear and complain concerning the taxes in controversy for the years mentioned. A valid tax must rest upon an assessment made as required by law. (*Houghton* v. *Austin,* 47 Cal. 663; Cooley on Taxation, pp. 257, 258; Black on Tax Titles, Secs. 123, 124.)

*Messrs. Kirk & Clinton,* and *Mr. Peter Breen,* for Respondents.

MR. COMMISSIONER CALLAWAY prepared the following opinion for the court:

Appellants, James A. Murray, the Montana Loan & Realty Company, and the Home Investment & Realty Company, as owners of the Railroad lode claim, seek to enjoin the collection of certain taxes levied upon a portion of the claim which they allege to be reserved for mining purposes. During the years in controversy appellants paid the taxes due upon the mining claim as such. The taxes which are objected to were levied for county and municipal purposes upon the basis that the surface of the claim has an independent value, and is used for other than mining purposes. At the close of appellants' case, respondents moved for a nonsuit, which was granted. Appellants moved

for a new trial, which was denied, whereupon they appealed from the judgment and the order denying their motion for a new trial.

Section 3, Article XII, of the Constitution, declares, in part: "All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law."

Section 3672 of the Political Code follows the language of the above section of the Constitution, and provides that "said surface ground, or any part thereof, so used for other than mining purposes shall be taxed at its full value for such other purposes."

The proposition submitted, then, is simple: If the surface ground of the Railroad lode which is in controversy in this action, at the time the tax was levied, was used for other than mining purposes, and had a separate and independent value for such other purposes, the tax, if regularly levied, should be sustained. That the surface of the Railroad lode at the time in question had a separate and independent value for townsite purposes is, upon the records, indubitable. Was it used for townsite purposes? It appears to be within the corporate limits of the city of Butte. If its owners had laid out the surface of the Railroad lode into blocks, lots, streets and alleys, filed a plat thereof with the county clerk, and, by compliance with the law provided in such cases, made the surface of the Railroad lode claim an addition to the city of Butte, and sold the lots for townsite purposes, there could be no question but what the vendors made use of the lots so sold for townsite purposes.

Appellants introduced in evidence a plat marked "South Side Addition," which shows the surface of the Railroad claim to have been divided into blocks, lots, streets and alleys. Parts of the streets and alleys appear to have been condemned as such by the city of Butte. The blocks, lots and streets on the Railroad claim conform to the streets and alleys of Butte as they existed at the time of the trial. The part claimed as reserved for mining purposes is divided into blocks and lots.

The witness Cobban testified: "As to whether or not that claim, or any part of it, was ever platted by either of the owners of the claim, or any one representing it, is a kind of a hard question to answer. The claim was platted for private use, and it was afterward used for private plat. There never was a plat filed of that claim, and no record was ever made of the plat. The lots on Wyoming street originally were, I think, 60 feet in width and 110 feet long. This was in the reserved portion, that I have referred to." Further on he said: "The property described in the complaint as being that which Mr. Hinds, as treasurer of Silver Bow county, has advertised for sale and threatens to sell, I suppose, has reference to the South Side Addition, or the Railroad lode."

The record discloses affirmatively that the greater portion of the surface of the Railroad claim has been sold for townsite purposes, and is built up as a part of the city of Butte. The lots were not sold and conveyed by number of the lot and block, but by metes and bounds, conforming to the lots and blocks as platted. Appellant Murray so conveyed considerable portions of it. The Thompson Investment Company, a real estate agency, and Messrs. Cobban & Casey, real estate agents, at different times, had charge of the property for the purpose of disposing of it. Mr. Casey testified: "There was a mineral reserve made on that lode claim, the western boundary of which was Wyoming street, and this so-called Indiana avenue. That avenue was not in existence at that time, but I know that there was a solid block between that and Wyoming street, which was reserved for a shaft for mining purposes."

No mining appears to have been done upon the so-called reserve, except that in 1893 or 1894 a shaft about thirty feet deep was sunk on what is designated as lot 4 in block 3. This lot was afterwards sold. Indeed, the west half of the "solid block" referred to by Mr. Casey, as indicated by the map marked "Exhibit A," is covered with buildings, as is lot 17 on the easterly half. The so-called reserve apparently consists of six lots and two fractional lots on the easterly side, and approximately three and a half lots on the southerly side, of block 3. At any rate, all the other lots appear to have been built upon, and so clearly used for townsite purposes. Now as to the reserve as last defined: The witness Corbett, a real estate agent, testified that while he was with the Thompson Investment Company that concern was instructed not to sell a portion of the property which corresponds to block 3, but said "it was later on segregated and sold." No explanation of this statement was made.

It thus appears that the owners of the Railroad lode accomplished every purpose which they could have brought about had they formally made the Railroad claim an addition to the city of Butte. They divided it into blocks and lots conforming to the streets and alleys of Butte, and sold the same as favorable opportunity offered. If they once did reserve a portion of the premises, with the intention of using the same for mining purposes, that intention, as shown by their acts, was abandoned. The property was platted and either sold or held for sale for townsite purposes. When the surface of the Railroad claim became of an independent value for townsite purposes, and was used as such, it became subject to taxation under the Constitution and statutes.

Appellants have failed to prove that the tax complained of does not lawfully attach to the property in controversy, and upon that issue the holding of the lower court was correct. Merely claiming a portion of the premises as reserved for mining purposes, and at the same time disclosing a state of facts absolutely inconsistent with the basis of their contention, places

them in the position of having adopted a subterfuge to escape paying taxes on the property.

2.   Appellants seek to avoid the tax levies because, as they say, the boards of equalization were not properly constituted. Under the pleadings and proof, this feature of the case is immaterial.   Appellants do not complain that the taxes were in any wise excessive, their only claim being that the tax is wholly invalid.   Having held that the property was subject to taxation, it is unnecessary to consider this point further.

It follows that the judgment and order should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

MR. CHIEF JUSTICE BRANTLY, not having heard the argument, takes no part in this decision.